<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KEVIN SMITH,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **GAVIN BISHOP,** *et al.* <br><br> Defendants. | Civil Action No. 20-12526 (ZNQ) (DEA) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss by Defendants Corrosion Control Specialist, Inc. ("CCSI"), Allen Bishop, and Pat Bishop (collectively, "Defendants") for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). ("Motion," ECF No. 20.)  Plaintiffs Kevin Smith and Joanna Smith opposed, ("Opp'n Br.," ECF No. 22), and Defendants replied  ("Reply Br.," ECF No. 23).  The Court has carefully considered the parties' submissions and decided the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the following reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss.

I. <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

Plaintiffs filed their initial complaint on September 10, 2022 (ECF No. 1), and Defendants filed a motion to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (the "First Motion to Dismiss," ECF No. 8).  The Court granted the First Motion to Dismiss for lack of personal jurisdiction and gave Plaintiffs leave to amend.  (ECF No.

17.) After Plaintiffs filed the Amended Complaint, Defendants filed this Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6). (*See* "Moving Br.," ECF No. 20). The Court incorporates by reference the facts articulated in its opinion granting the First Motion to Dismiss, but the Court will briefly restate the pertinent allegations.[1] (*See* ECF Nos. 16, 17.) Allegations are taken from the Amended Complaint ("Am. Compl." or "Amended Complaint," ECF No. 18) and accepted as true for the purpose of deciding a Rule 12(b)(2) motion.[2]

Plaintiffs Kevin Smith and Joanna Smith (collectively, "Plaintiffs") are New Jersey citizens. (Am. Compl. ¶¶ 7–8.) Pat and Allen Bishop are Florida citizens, and their company CCSI maintains its principal place of business in Florida. (*Id.* ¶¶ 9, 11.) Defendant Gavin Bishop is a Florida citizen and an employee of CCSI. (*Id.* ¶ 10.) At the time of the incident, Kevin Smith was employed by Belcan and was responsible for repairs and maintenance of a U.S. Naval vessel known as the Patuxent, which was located at the Philadelphia Naval Shipyard in Pennsylvania. (*Id.* ¶ 14.) Belcan hired CCSI to perform various tasks associated with Patuxent (the "Patuxent Project"), and Belcan assigned Kevin Smith to oversee and inspect work performed by CCSI on the Patuxent Project. (*Id.* ¶ 15, 17.) During the pendency of the Patuxent Project, Kevin Smith and Defendants Allen Bishop, Gavin Bishop, and Pat Bishop temporarily stayed at a hotel in Mount Laurel, New Jersey. (*Id.* ¶ 16.)

On September 16, 2018, Allen Bishop approached Kevin Smith at the hotel and invited him to a nearby restaurant in Maple Shade, New Jersey. (*Id.* ¶ 18.) While at the restaurant, Plaintiff and Allen Bishop only engaged in a limited discussion concerning the Patuxent Project. (*Id.* ¶ 19.) Plaintiff further alleges that, while at the restaurant, Gavin Bishop became "increasingly hostile

---

[1] The Court previously dismissed Plaintiffs' complaint for lack of personal jurisdiction. *See Smith v. Bishop*, Civ. No. 20-12526, 2021 WL 1820487, at *4 (D.N.J. May 6, 2021).
[2] *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

and belligerent" towards Kevin Smith. (*Id.* ¶ 21.) Upon the conclusion of the "meeting," Allen Bishop departed and left Kevin Smith and Gavin Bishop at the restaurant. (*Id.* ¶ 22.) While waiting for transportation, Gavin Bishop struck Kevin Smith on the head from behind, which rendered Kevin Smith unconscious. (*Id.* ¶ 23.) Plaintiffs claim that CCSI hired Gavin Bishop despite knowing his propensity for committing violent and unlawful acts. (*Id.* ¶ 25.)

Plaintiffs raise five causes of action before the Court: the assault and battery committed by Gavin Bishop (Count I) (*id.* ¶¶ 24–26); Defendant CCSI's vicarious liability relating to Count I (Count II) (*id.* ¶¶ 27–31); Defendants Allen Bishop, Pat Bishop, and CCSI's negligent hiring of Gavin Bishop (Count III) (*id.* ¶¶ 32–34); Defendants Allen Bishop, Pat Bishop, and CCSI's negligent supervision or retention of Gavin Bishop (Count IV) (*id.* ¶¶1 35–37); and Plaintiff Joanna Smith's per quod claim as a result of her husband Kevin Smith's injury (Count V) (*id.* ¶¶ 38–40).

The Court previously granted the First Motion to Dismiss because it lacked both general jurisdiction and specific jurisdiction over Defendants. (*See generally* ECF No. 16.) In the initial complaint, Plaintiffs provided no competent evidence to establish general jurisdiction over CCSI because Defendants offered affidavits to establish that fewer than 1% of CCSI's projects were in New Jersey. (*Id.* at 4.) In addition, Plaintiffs failed to establish general jurisdiction over Defendants Allen and Pat Bishop because Plaintiffs failed to allege any facts as to where they were served. (*Id.* at 4–5.) Moreover, Allen Bishop and Pat Bishop never consented to this Court's exercise of general jurisdiction. (*Id.* at 5.) The Court, therefore, found that it lacked general jurisdiction over Defendants. (*Id.* 4–5.)

Furthermore, Plaintiffs also provided no basis for specific jurisdiction over Defendants in their initial complaint. (*Id*. at 5.) The Court explained that although Defendants directed their activities to the forum state by operating ten projects in New Jersey, the injury to Plaintiff Kevin

Smith did not arise from any of those projects. (*Id.* at 6.) Thus, the Court lacked specific jurisdiction over Defendants because the injuries did not arise from and was not related to Defendants' purposeful availment of activities in New Jersey. (*Id.*) As for the meal that took place in New Jersey, the Court found that Plaintiffs had failed to plead—in their original complaint, through sworn affidavits, or other competent evidence—facts to support the contention that Defendants purposefully requested or arranged for the meal to take place in New Jersey. (*Id.*) Plaintiffs, therefore, had failed to make a prima facie case of sufficient minimum contacts. (*Id.*)

The Court also found that Plaintiffs had failed to satisfy the reasonableness prong for specific jurisdiction, in part, because they failed to clearly articulate their arguments concerning same. (*Id.* at 7.) Based on the facts proffered in the complaint, the Court found that Plaintiff had failed to establish that Defendants could reasonably foresee needing to defend a lawsuit in New Jersey because Plaintiffs had failed to establish sufficient minimum contacts between Defendants and New Jersey. (*Id.*) Plaintiffs had not provided the Court with enough facts to support the contention that Defendants purposefully placed Gavin, their employee/agent, into New Jersey as the complaint was not clear on which party proposed New Jersey to be the location of the meal. (*Id.*) For those reasons, the Court granted Defendants' First Motion to Dismiss, finding that it lacked personal jurisdiction over Defendants, and afforded Plaintiffs the opportunity to file the Amended Complaint. (*Id.* at 8.)

## II.  PARTIES' ARGUMENTS

### A.  Defendants' Position

Defendants argue that Plaintiffs provide no factual support for the exercise of personal jurisdiction over Defendants because Plaintiffs have failed to show a connection between them and New Jersey. (Moving Br. at 8, ECF No. 20.) Defendants contend that Plaintiffs still fail to

assert any facts that would subject Defendants to general or specific jurisdiction. (*Id.* at 5–11.) They argue that Plaintiffs' claims are not related to Defendants' limited contacts with New Jersey, and that Defendants' contacts with New Jersey are not continuous or systematic, and that Defendants have not purposefully established minimum contacts in New Jersey. (*Id.* at 4.)

First, Defendants argue that they are not subject to specific jurisdiction in New Jersey. (*Id.* at 5.) Only 1.6% of CCSI's business has been performed in the State of New Jersey, and none of those projects are related to the claims in this lawsuit. (*Id.* at 2, 4–5.) CCSI did not purposefully direct its activities at the forum, and the only instance here that relates to Defendants is that Allen Bishop had a meal at a restaurant in Maple Shade, New Jersey. (*Id.* at 6.) Outside of that and Defendants' stay at the hotel in New Jersey, Defendants were working on a project in Philadelphia, Pennsylvania. (*Id*. at 6.) As reflected in Defendants' declarations, neither CCSI, Allen Bishop, nor Pat Bishop regularly transact business in New Jersey or otherwise derive substantial revenue from the State. (P. Bishop Decl. ¶¶ 9–28, ECF No. 20-2; A. Bishop Decl. ¶¶ 6–18, ECF No. 20-1). Therefore, Defendants' limited business activities in New Jersey did not give rise to Plaintiffs' claims and cannot serve as the basis for exercising specific jurisdiction*.* (*Id.* at 7.) Thus, it cannot be said they purposefully directed its activities at the forum. (Moving Br. at 7–8.)

Second, Defendants argue that they are not subject to general jurisdiction in New Jersey. (*Id.* at 8.) Allen and Pat Bishop are not residents of New Jersey, and CCSI is a Florida company with their principal place of business in Florida. (*Id.* at 9–10.) Defendants contend that this Court previously found that Plaintiffs provided "no competent evidence to establish general jurisdiction." (*See* ECF No. 16.) Defendants argue that Plaintiffs' Amended Complaint likewise contains no allegations that are sufficient to establish general jurisdiction. (Moving Br. at 10.)

Even if a basis for personal jurisdiction was found through specific or general jurisdiction, Defendants argue that exercising personal jurisdiction over Defendants would violate Due Process Clause. (*Id.* at 11.) Defendants contend they do not have sufficient minimum contacts with New Jersey, and the exercise of jurisdiction over them would violate traditional notions of fair play and substantial justice. (*Id.*) Defendants argue that Plaintiffs' new allegation that Pat and Allen Bishop temporarily stayed at the hotel in New Jersey is irrelevant because it is not related to Plaintiffs' cause of action. (Moving Br. at 13.) Moreover, the allegation of Allen Bishop inviting Plaintiffs to a restaurant in New Jersey is unrelated to Plaintiffs' claim for negligent hiring and supervision. (*Id.*) The single meal at the restaurant is not enough to satisfy the minimum contact standard, especially since the lawsuit arises out of the negligent hiring and supervising of Gavin Bishop, which did not occur in New Jersey. (*Id.*) Accordingly, Defendants argue that they did not purposefully avail themselves of the benefits of New Jersey. (*Id.*) Their limited business with New Jersey is not related to this claim, and they contend that the single meal at the restaurant is not enough to establish minimum contacts, especially since this Court previously held that sufficient minimum contacts were lacking. (*Id.* at 13–14; *see* ECF No. 16.)

### B. <u>Plaintiffs' Position</u>

In opposition, Plaintiffs argue that this Court has personal jurisdiction over Defendants. Plaintiffs argue that Defendants' Motion to Dismiss should be denied because it does not meet the legal standard under Rule 12(b)(2). Plaintiffs contend that Defendants purposefully directed activities in New Jersey. (Opp'n Br. at 4.) Defendants stayed at a hotel in Mount Holly, New Jersey, during their work on the Patuxent Project in Philadelphia, Pennsylvania. (*Id.* at 5.) Allen Bishop invited Plaintiff Kevin Smith to a restaurant in Maple Shade, New Jersey, to discuss CCSI's contractual obligations in conjunction with the Pantunxent Project. (*Id.*) Defendants admit that at

least 1% of their revenue comes from New Jersey. (*Id.* at 6.) In addition, Plaintiff Kevin Smith's injuries were caused by Defendants' conduct in New Jersey and relate to their activities with New Jersey. (*Id.* at 6–7.) The meeting conducted at the restaurant related to their work on the Pantuxent Project. (*Id.* at 7.) Plaintiffs argue that it is apparent that Gavin Bishop is an agent for Defendants and was acting within the scope of his employment during the tortious conduct that gave rise to this lawsuit. (*Id.*)

Plaintiffs allege that Defendants purposefully directed activities in New Jersey. (*Id.* at 4.) In support of their argument, Plaintiffs rely on *Calder v. Jones*, 465 U.S. 783, 788 (1984). In *Calder*, a California actress brought a libel suit in California state court against a reporter and an editor, both of whom worked for the National Enquirer at its headquarters in Florida. (Opp'n Br. at 6; *Calder*, 465 U.S. at 784–85.) The plaintiff's libel claims were based on an article written and edited by the defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000. (Opp'n Br. at 5; *Calder*, 465 U.S. at 785.) The Court held that California's assertion of jurisdiction over the defendants was consistent with due process. (Opp'n Br. at 5.) "In sum, California [wa]s the focal point both of the story and of the harm suffered." *Calder*, 465 U.S. at 789. Jurisdiction over the defendants was "therefore proper in California based on the 'effects' of their Florida conduct in California." *Id.*

Plaintiff argues that the crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. (Opp'n Br. at 5.) Plaintiffs argue that this case is analogous to *Calder* because the claims here arise out of tortious activities committed by Defendants entirely within the State of New Jersey. (*Id.*) They contend that Defendants' physical presence, their business activities, and their tortious conduct within New Jersey established purposeful contacts with the forum. (*Id.* at 6.)

Moreover, Plaintiffs argue that exercising jurisdiction over Defendants would not violate their Due Process rights because Defendants could reasonably foresee having to defend themselves in New Jersey. (*Id.* at 8.) The incident itself occurred in New Jersey during a business-related conduct between Gavin and Allen Bishop and Kevin Smith. (*Id.* at 9.)

### C.  **Defendants' Reply**

In their reply, Defendants emphasize that Plaintiffs' previous complaint was dismissed by this Court for lack of personal jurisdiction. Defendants note that Plaintiff's Amended Complaint includes three new allegations but still fails to assert any facts that supports this Court's exercise of personal jurisdiction. (Reply Br. at 1.) Defendants argue that Plaintiffs have failed to demonstrate that any of their claims against Defendants "arise out of or are related to" Defendants' contacts with New Jersey. (*Id.* at 6.) Since Plaintiffs failed to meaningfully amend their pleading to state a basis for exercising personal jurisdiction over Defendants, this Court should reach the same conclusion as before and grant Defendants' motion. (*Id.* at 2.)

Defendants emphasize that they are not subject to personal jurisdiction in New Jersey because the alleged assault and the negligent hiring did not arise out of the business conversation between Allen Bishop and Plaintiff Kevin Smith. (*Id.* at 3.) Nor does Pat Bishop and Allen Bishop staying at a hotel in New Jersey relate to Defendants' contacts in New Jersey. (*Id.*) Defendants contend there are no allegations in the Amended Complaint that expresses that the negligent hiring or lack of supervising Gavin Bishop took place in New Jersey. (*Id.*) The Amended Complaint does, however, highlight that the meeting not only ended before the assault took place but that Gavin Bishop was not even a part of the meeting. (*Id.* at 5–6.)

Last, Defendants contend that Plaintiffs' reliance on *Calder* is inapposite because that case involved libel claims based on an article written and edited by the defendants in Florida for

publication in a national newspaper that circulated in California. (*Id*.) In contrast, here, Plaintiffs argue that this Court has jurisdiction over Defendants because they engaged in tortious conduct within New Jersey. Defendants contend, however, that Plaintiffs failed to allege a single act by Defendants in New Jersey that gave rise to their claims. (*Id.* at 6.) Defendants note that the only relevant contact with New Jersey might be Pat and Allen Bishop's stay at the New Jersey hotel. (*Id.*) Defendants argue, however, that this is not enough for Defendants to reasonably anticipate being sued in New Jersey. (*Id.*) Defendants urge this Court to grant their Motion and dismiss the Amended Complaint with prejudice. (*Id.*)

### III.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. For purposes of a motion to dismiss pursuant to Rule 12(b)(2), the "plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence, . . . not mere allegations." *Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (internal quotation marks and citation omitted). When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

When assessing a court's ability to hear a case by exercising personal jurisdiction, the plaintiffs bear the initial burden of alleging a basis for personal jurisdiction under New Jersey's long-arm statute. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. *Amberson Holdings LLC v. Westside Story Newspaper,* 110 F. Supp. 2d 332, 334 (D.N.J. 2000) ("New Jersey's long-arm statute permits courts to exercise jurisdiction to the

fullest extent under the Constitution."). Due process requires a defendant to purposefully establish "minimum contacts" with the forum state such that "maintenance of the lawsuit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* The court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). A court can have jurisdiction over a defendant through exercising general or specific jurisdiction. *Id.*

## IV. DISCUSSION

1. General Jurisdiction

To establish general jurisdiction, Plaintiffs must show that the quality and nature of the Defendants' contacts with New Jersey are so continuous and systematic as "to render the [foreign corporation] essentially at home in the forum state . . . *i.e.* comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 131–33 n.11 (2014) (citations omitted). Therefore, the "paradigm bases for general jurisdiction" over a corporation are its "place of incorporation and principal place of business." *Id*. at 137.

Plaintiff has failed to show that CCSI would be subject to general jurisdiction in New Jersey. A corporate defendant is considered at home based, in part, on where their principal place of business is located. *Daimler*, 571 U.S. at 131–33. Here, CCSI's principal place of business is located in Florida. In addition, CCSI's business with New Jersey in general only accounts for 1.6% of their revenue. (Moving Br. at 4–5.) As reflected in Defendants' declarations, neither CCSI, Allen Bishop, or Pat Bishop regularly transact business in New Jersey or otherwise derive substantial revenue from the State. (*Id*.) As for Pat and Allen Bishop, they are citizens and residents of Florida. (Am. Compl. ¶¶ 9–11.) Thus, there is no basis to say that Defendants would be essentially at home in New Jersey rather than Florida.

2. Specific Jurisdiction

A defendant is subject to specific jurisdiction if the claims in the lawsuit arise out of or are related to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984). Exercising specific jurisdiction to the extent allowed by the Due Process Clause requires the Court to determine whether: (i) the non-resident defendant has sufficient "minimum contacts" with the forum state; and (ii) the exercise of jurisdiction over the non-resident defendant would not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In analyzing whether a non-resident defendant meets the requirements of sufficient "minimum contacts," courts in the Third Circuit look to whether the contacts are "purposefully directed" at a resident of the forum state, where "the injury arises from or is related to those activities," such that the defendant should reasonably anticipate being haled into court there. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Specifically, a defendant's purposefully directed activities are those activities in which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State," and thereby invokes "the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 109 (1987) (quotations omitted).

Due process requires that a non-resident defendant have "fair warning" that a particular activity may subject him to jurisdiction through his own "purposefully directed" activities in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). A proper showing of minimum contacts requires that the defendant's actions in the forum state create a "substantial connection" with the forum State, not merely random or fortuitous contacts. *Burger King*, 471 U.S. at 475.

Here, the injury to Kevin Smith did not arise from and was not related to Defendants purposeful availment of activities in New Jersey. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007) ("Identifying some purposeful contact with the forum is but the first step in the specific jurisdiction analysis. The plaintiffs' claims must also arise out of or relate to at least one of those contacts" (internal citation omitted)). Plaintiffs argue that the CCSI could reasonably anticipate being sued in New Jersey because of Defendants' following contacts with New Jersey: (1) Defendant Allen Bishop shared a meal with Plaintiff Kevin Smith at a restaurant in New Jersey; (2) Pat Bishop and Allen Bishop stayed at a hotel in New Jersey; and (3) CCSI conducts at least 1% of its business in New Jersey. (Am. Compl. ¶¶ 16, 18–20; Opp'n Br. at 6; Smith Cert. ¶¶ 17, 22.) For the following reasons, the Court finds that Defendants' contacts with New Jersey were insufficient such that they could not reasonably anticipate having to defend a suit here. *See Gitomer v. Rosefielde*, 726 F. Supp. 109, 110 (D.N.J. 1989) ("In order for an individual's contacts with a forum state to constitute the requisite 'minimum contacts,' the connection with the forum state must be sufficient so that the individual should reasonably anticipate being haled into court there.").

The Court finds that CCSI did not purposefully direct its activities at the forum. Allen Bishop's purpose for being at the restaurant in New Jersey was unrelated to the Patuxent Project in Pennsylvania. Kevin Smith shared a meal with Allen and Gavin Bishop in New Jersey and, at some point during the meal, Allen Bishop and Kevin Smith happened to discuss limited business activities concerning the Patuxent Project while Gavin Bishop became intoxicated on the side. (*See* Smith Cert. ¶¶ 23–27; ECF No. 10-1.) Pat Bishop was not present for any part of the meal, and Allen Bishop had already left the restaurant at the time of the alleged assault—only Gavin Bishop remained. (Am. Compl. at ¶¶ 18–22; Smith Cert. at ¶¶ 22–25.) In addition, the alleged

assault occurred outside the restaurant while Kevin Smith and Gavin Bishop waited for transportation. (Smith Cert. at ¶¶ 25–28).

Moreover, Plaintiffs' reliance on *Calder* is misplaced. That case involved libel claims based on an article written and edited by the defendants in Florida for publication in a national newspaper that circulated in California. *See Calder*, 465 U.S. at 788. Plaintiffs argue that Defendants engaged in tortious conduct within New Jersey. However, they have failed to allege a single act by Defendants in New Jersey that gave rise to their claims. Neither the alleged assault nor the negligent hiring/supervision occurred as a result of Allen Bishop discussing business with Kevin Smith at a restaurant in New Jersey, nor Pat Bishop and Allen Bishop staying at a hotel in New Jersey. Moreover, there are no allegations in the Amended Complaint that Defendants negligently hired Gavin Bishop in New Jersey, or otherwise failed to properly supervise his work activities in New Jersey.

In conclusion, the Court finds that Defendants did not purposefully direct their activities in this forum. This Court cannot exercise specific jurisdiction over a Florida company and Florida residents who are not alleged to have committed any wrongful acts in New Jersey and whose contacts with the State are wholly unrelated to the claims at issue. The additional allegations within the Amended Complaint do not cure the deficiencies of the previous complaint because they provide no basis for personal jurisdiction through either specific jurisdiction or general jurisdiction.

The Court, however, declines to dismiss the Amended Complaint at this time without considering whether transfer to another court is in the interest of justice. *See Fesniak v. Equifax Mortg. Servs. LLC*, Civ. No. 14-3728, 2015 WL 2412119, at *7 (D.N.J. May 21, 2015). When a court lacks jurisdiction over a defendant, "the court shall if it is in the interest of justice, transfer

such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed." *See also Island Insteel Sys. Inc. v. Waters*, 296 F.3d 200, 218 (3d Cir. 2002) (noting that 28 U.S.C. §1631 permits transfer where the court lacks personal jurisdiction). To transfer pursuant to § 1631, a court must find that (1) the action "could have been brought" in the transferee district and (2) transfer is in the interest of justice. *D'Jamoos ex rel. Estate of Weingeroff v Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009). "The party seeking transfer of venue bears the burden of establishing that transfer is warranted and must submit "adequate data of record" to facilitate the court's analysis. *Nat'l Prop. Invs. VIII v. Shell Oil Co.*, 917 F. Supp. 324, 326 (D.N.J. 1995) (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993)).

Here, Defendants assert that if the Court decides to transfer this matter instead of dismissing, Defendants concede that the United States District Court for the Middle District of Florida, Tampa Division, is an appropriate alternative venue for this matter. (Reply Br. at 7.) However, at this time, the Court is unable to determine whether transfer is in the interest of justice. Defendants only raised the issue of transfer in one sentence of their reply brief. Neither Defendants nor Plaintiffs addressed whether it would be in the interest of justice to transfer this case to another district. The issue was not briefed by the parties and is not framed properly before the Court. The Court, therefore, will grant Defendants' motion insofar as they seek a finding that this Court lacks personal jurisdiction over them, but the Court will stay as to whether dismissal or transfer is the appropriate course of action pending further briefing on this issue. Defendants shall have thirty (30) days from the date of this opinion and accompanying Order to file a motion to transfer venue and properly brief the issue.

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT** in part and **DENY** in part Defendants' Motion to Dismiss. An appropriate Order will follow.

Date: **July 29, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
